SRD/RS: USAO#2025R00216
HMG: 10/22/2025

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DALYA ATTAR,<br>JOSEPH J. ATTAR,<br>   a/k/a "Yossi Attar,"<br>   a/k/a "Jay Attar," and<br>KALMAN G. FINKELSTEIN,<br><br>Defendants. | Criminal No. SAG 25 CR 324<br><br>(Conspiracy, 18 U.S.C. § 371; Extortion via Interstate Communications, 18 U.S.C. § 875(d); Interception and Disclosure of a Wire, Oral, or Electronic Communication, 18 U.S.C. § 2511(1)(c) and (d); Travel Act, 18 U.S.C. § 1952(a)(3) and (b)(2); Aiding and Abetting, 18 U.S.C. § 2) |

**INDICTMENT**

The Grand Jury for the District of Maryland charges that:

**COUNT ONE**
**(Conspiracy 18 U.S.C. § 371)**

At times relevant to this Indictment:

1. Defendant **DALYA ATTAR** was a resident of Baltimore, Maryland. From 2015 until approximately September 2022, **DALYA ATTAR** served as an Assistant State's Attorney in the Office of the State's Attorney for Baltimore City. From January 2019 to January 2025, **DALYA ATTAR** served as a Member of the Maryland House of Delegates. On January 24, 2025, she was appointed to the Maryland Senate.

2. Defendant **JOSEPH ATTAR**, a/k/a "Yossi Attar," a/k/a "Jay Attar," was a resident of Baltimore County, Maryland. **JOSEPH ATTAR** was the older brother of **DALYA ATTAR** and assisted with **DALYA ATTAR**'s 2022 campaign team.

3. Defendant **KALMAN G. FINKELSTEIN ("FINKELSTEIN")** was a resident of Baltimore, Maryland. **FINKELSTEIN** was a sworn law enforcement officer with the Baltimore City Police Department. **FINKELSTEIN** assisted with **DALYA ATTAR's** 2022 campaign team.

4. WhatsApp was an encrypted messaging application that permitted users to send and receive messages, photographs, videos, and recorded voice notes. WhatsApp messages are sent via an internet connection and is thus a facility of interstate and foreign commerce.

5. Victim 1 was a dual citizen of the United States and Israel and a resident of Israel. Victim 1 was a paid political consultant, working on the campaigns of candidates for both federal and state office. Victim 1 worked as a consultant for candidates from the Republican and Democratic Parties.

6. Victim 1 was a paid political consultant for **DALYA ATTAR's** 2018 candidacy for the Maryland House of Delegates. Shortly before the election, Victim 1's involvement with **DALYA ATTAR's** campaign was discontinued after a disagreement.

7. After leaving **DALYA ATTAR's** campaign, Victim 1 was known by **DALYA ATTAR** and her associates to be unsupportive of **DALYA ATTAR's** candidacy for office.

8. Victim 2 was a resident of Baltimore City, Maryland. At some point, Victim 2 had a romantic relationship with Victim 1 even though Victim 2 was married to another person.

9. The Hebrew word "shidduchim" refers to a system of matchmaking in which members of the Orthodox Jewish community are introduced to each other for the purpose of marriage. A "shadchan" is a Jewish professional matchmaker.

**The Conspiracy**

10. From in or about January 2020 to in or about July 2022, in the District of Maryland and elsewhere, the defendants,

**DALYA ATTAR,
JOSEPH J. ATTAR, and
KALMAN G. FINKELSTEIN,**

did knowingly and willfully combine, conspire, confederate, and agree with each other and with others known and unknown to the grand jury (collectively "co-conspirators"), to commit offenses against the United States, namely,

a. to knowingly transmit in interstate and foreign commerce a communication containing a threat to injure the property and reputation of the addressee and of another, with the intent to extort from any person, any money and other thing of value, in violation of 18 U.S.C. § 875(d);

b. to intentionally intercept and endeavor to intercept, and procure any other person to intercept and endeavor to intercept a wire, oral, and electronic communication, and to intentionally disclose and endeavor to disclose, to any other person, the contents of any wire, oral, and electronic communication, knowing and having reason to know that the information was obtained through the interception of a wire, oral, and electronic communication, and intentionally use and endeavor to use, the contents of any wire, oral, and electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, and electronic communication, in violation of 18 U.S.C. § 2511(1)(c) and (d); and

 c. to use a facility in interstate commerce with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit: extortion in violation of Maryland Criminal Law §§ 3-701, 3-705, and 3-706; and thereafter to perform and attempt to perform acts to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity, in violation of 18 U.S.C. § 1952(a)(3) and (b)(2).

### The Purpose of the Conspiracy

11. It was the purpose of the conspiracy that the co-conspirators sought to surreptitiously obtain evidence of the relationship between Victims 1 and 2 so that the evidence could be used to prevent Victim 1 from (i) engaging in any act or speech that could negatively impact the election campaign or political aspirations of **DALYA ATTAR**; (ii) performing any work for any other candidates for office who would challenge **DALYA ATTAR**; and (iii) otherwise taking any action that could negatively influence **DALYA ATTAR's** election campaigns, including the 2022 Maryland House of Delegates election.

*Manner and Means*

12. The manner and means by which the co-conspirators sought to accomplish the purpose of the conspiracy included, but were not limited to, the following:

 a. Obtaining information about Victim 1's travel plans from Israel to the United States and Victim 1's use of a vehicle and an apartment in Maryland;

 b. Placing a tracking device on the vehicle known to be driven by Victim 1;

 c. Placing a recording device in the apartment in which Victim 1 stayed in order to obtain audio and video recordings of Victims 1 and 2;

d. Obtaining, reviewing, and maintaining a video of Victim 1 and 2 in bed together;

e. Threatening Victim 2 in person and via interstate electronic communications that the recording of Victims 1 and 2 in bed together would be made public if Victim 1 did not comply with the co-conspirators' demands;

f. Threatening Victim 1 via interstate and foreign electronic communications that a recording of Victim 1 and 2 in bed together would be made public if Victim 1 did not comply with the co-conspirators' demands; and

g. Communicating via WhatsApp and regularly deleting messages from the application in order to avoid detection of the criminal conspiracy.

*Overt Acts*

13. In furtherance of the conspiracy and to accomplish its objects, the following acts were committed in the District of Maryland and elsewhere:

*The Illegal Wiretap for the Purpose of Extortion*

a. On or about January 2, 2020, **DALYA ATTAR** sent a series of WhatsApp messages to Co-Conspirator 1 stating, in relevant part, "2 years later [Victim 1] is still looking to screw me badly . . . I just want her to be a non-issue in my mind and in reality that won't happen as long as she is relevant or doesn't have anything to worry about . . . Because I believe she's building things up, even small things, but in the end when it's the right time for her (close to re election), it'll come out . . . And even more reason why the lady should be afraid to come out with anything at any point."

b. On or about January 9, 2020, **FINKELSTEIN** sent a WhatsApp message to **JOSEPH ATTAR**, stating, "We need to follow [Victim 1] when she is here," to which **JOSEPH ATTAR** responded, "Couldn't be more thrilled."

c. On or about January 13, 2020, **JOSEPH ATTAR** sent a WhatsApp message to **FINKELSTEIN** stating, "Hey. Got the info?" **FINKELSTEIN** responded, "13th -22nd," which was a reference to Victim 1's travel dates from Israel to Baltimore, Maryland. **JOSEPH ATTAR** asked, "What time does she get here and where will she be?" **FINKELSTEIN** responded, "I'm working on that." While in Baltimore, Victim 1 stayed in the apartment of a family member of **FINKELSTEIN's**.

d. On or about January 14, 2020, **FINKELSTEIN** sent a series of WhatsApp messages to **JOSEPH ATTAR** stating, in relevant part, "She driving my [relative's] car . . . It's at my house now . . . Did you look to see if you can get the tracker."

e. On or about January 15, 2020, **JOSEPH ATTAR** and Co-Conspirator 2 communicated regarding the purchase and installation of a tracking device to be placed on a vehicle driven by Victim 1 that was owned by a family member of **FINKELSTEIN**.

f. On or about January 15 and January 16, 2020, **JOSEPH ATTAR**, **FINKELSTEIN**, Co-Conspirator 2, and Co-Conspirator 3 communicated regarding the purchase and installation of covert recording devices to be placed in the apartment where Victim 1 was to stay.

g. On or about January 15, 2020, **FINKELSTEIN** created a WhatsApp voice message stating:

> Why do we have to replace it? If we're able to put even one in now or maybe a couple in now, if we find places where we can put them, that would be great. Even if they just serve right now just for audio and we put them somewhere where they can't see, that would be good in itself.

h. On January 15, 2020, Co-Conspirator 3 purchased two surreptitious recording devices disguised as smoke detectors. Co-Conspirator 3 sent a WhatsApp voice message to **JOSEPH ATTAR** stating:

> I guess we can do whatever you want but I ordered the two smoke detector ones. It won't be here until tomorrow, but if we have our chance tonight and we can get in there, we probably should do that.

i. On or about January 16, 2020, **FINKELSTEIN** communicated Victim 1's whereabouts to co-conspirators, which he knew because Victim 1 was watching **FINKELSTEIN's** children at the time. **FINKELSTEIN** created voice messages on WhatsApp stating:

> FYI: . . . [**FINKELSTEIN's** wife], is coming in this evening at about 8:30 pm. After that, she is gonna basically relieve [Victim 1] and [Victim 1] then will for sure go back to the apartment. So, if anything's gonna to be done it needs to be done by the time my kids start getting home . . . Right now at least we have a little bit of a time frame where we know she's gonna be out of commission.
>
> They are gonna be on the move shortly because they're going to Rita's. So I'm not sure if maybe she's gonna say "Hold on, I want to stop at the apartment. Uh real quick" or something so watch when she starts being on the move where she's going. And make sure she's not going in that direction. But I do know they're gonna be on the move shortly. My children told me they're going to Rita's.

j. On or about January 16, 2020, **JOSEPH ATTAR** created a voice message on WhatsApp stating:

> Yes, we got all the units working, got the double-sided tape on it, all that kind of little crap. Got it connected, tested them and all that. Now I'm on my way there now to go and pick the lock and try to get in.

Later that day, **JOSEPH ATTAR** and other co-conspirators entered the apartment where Victim 1 was staying and installed a recording device in the living room and a recording device in the bedroom.

k. On or about January 16, 2020, **FINKELSTEIN** created a voice message on WhatsApp saying, "Damn, I wish I had [Victim 2's] stamina."

l. On or about January 17, 2020, **DALYA ATTAR** sent a WhatsApp message to **JOSEPH ATTAR**, **FINKELSTEIN**, Co-Conspirator 2, and Co-Conspirator 4 stating, "No further convo please re[garding] getting in. I told everyone on the group how we got in. Thanks."

m. On or about January 17, 2020, **FINKELSTEIN** sent a WhatsApp message to **DALYA ATTAR**, **JOSEPH ATTAR**, Co-Conspirator 2, and Co-Conspirator 4 stating, "Everyone delete anything from that group that you can now."

n. On January 18, 2020, **JOSEPH ATTAR** created a group chat (the "Group Chat") on WhatsApp between himself, **DALYA ATTAR**, **FINKELSTEIN**, and Co-Conspirator 2.

o. Between January 18, 2020 and January 21, 2020, **DALYA ATTAR, JOSEPH ATTAR, FINKELSTEIN**, and Co-Conspirator 2 exchanged WhatsApp messages in the Group Chat about Victim 1's whereabouts, and shared updated information from the tracking device related to Victim 1's location.

p. On or about January 20, 2021, **DALYA ATTAR** sent a message in the Group Chat stating, "Is there a gps on [Victim 2]'s car."

q. On or about January 20, 2020, **JOSEPH ATTAR** traveled to Las Vegas, Nevada, returning to Baltimore, Maryland on January 23, 2020. While in Las Vegas, **JOSEPH ATTAR** continued to access the surreptitiously placed cameras in the apartment where Victim 1 was staying.

r. On or about January 21, 2020, **JOSEPH ATTAR** sent a message in the Group Chat stating, "Shes in the house now…" Two hours later, he wrote, "We have a visitor..."

*The Extortion of Victims 1 and 2*

s. On or about March 11, 2021, **DALYA ATTAR** sent a series of WhatsApp messages to Co-Conspirator 1 stating, "[Victim 1] needs to be warned before mailers to the Jewish community start coming out about things I've voted on in the last 3 years. We're nearing my election. We can't wait until she does it already. Things as simple as anti police things . . . She wants her daughters to get married more than she wants to screw me . . . There's the perfect way to scare her re[garding] her daughters shidduchim . . . Each mailer can do a lot of damage. We have a way that can potentially stop her. Why not at least try."

t. On or about March 11, 2021, Co-Conspirator 1 sent a WhatsApp message to **DALYA ATTAR** stating, "when you have time, you, me and Yossi should work on the plan," to which **DALYA ATTAR** stated, "I am not working on any plan :) . . . I don't even know what you're talking about."

u. On or about March 26, 2021, **DALYA ATTAR** sent a WhatsApp message to Co-Conspirator 1 containing a link to an article that **DALYA ATTAR** claimed Victim

9

1 authored under a pseudonym. In response, Co-Conspirator 1 stated, "is that her best shot?" **DALYA ATTAR** responded with two voice messages on WhatsApp stating, "I don't know why we're not preempting it because we have a way to preempt it . . . I think we have a very, very easy on our end, simple way to very likely get her to just shut up and leave us alone . . . She's a smart lady and she knows how to screw with people . . . So, she has no reason to back down and to not screw with me, yet. If she has reason, the only thing she worries about are her kids and I'm not—I'm not saying we actually go after her kids but at the same time telling her that we have this information—she's worried about her kids' shidduchim. So, I'm not saying we leak this anywhere or we ever do that, but I'm saying we warn her with that, if you do go ahead and screw with me, we are gonna leak it. And she has to understand also that an article like this, obviously she's gonna say it wasn't her it wasn't her. Well, you know what? Maybe it wasn't her, but we don't care because we think it was her and that's enough for us to leak it."

v. On or about November 30, 2021, **DALYA ATTAR** sent a WhatsApp message to **JOSEPH ATTAR** and Co-Conspirator 1 stating, "If that video really exists, it'll be really helpful now." Co-Conspirator 1 replied, "i haven't seen it." **JOSEPH ATTAR** replied, "I will schedule the meeting."

w. On or about December 6, 2021, **JOSEPH ATTAR** sent a text message to Victim 2 requesting a meeting and stating that he "[w]anted to discuss an opportunity with [Victim 2]." The same day, **DALYA ATTAR** filed for re-election to the Maryland House of Delegates District 41.

10

x. On or about December 6, 2021, **JOSEPH ATTAR** sent a WhatsApp message to **DALYA ATTAR** containing a screenshot of a calendar appointment of **JOSEPH ATTAR's** meeting with Victim 2. **DALYA ATTAR** responded, "Have fun," and, "Be smart please."

y. On or about December 6, 2021, **JOSEPH ATTAR** sent a WhatsApp message to **FINKELSTEIN** containing a screenshot of a calendar appointment of **JOSEPH ATTAR's** meeting with Victim 2.

z. On or about December 7, 2021 at 9:07 am, **JOSEPH ATTAR** sent **DALYA ATTAR** a voice message on WhatsApp stating:

> Do you have anything in your phone from that whole situation? Any videos or pictures or anything like that? I remember we were sending stuff out. Do you have any of it?

**DALYA ATTAR** responded 33 seconds later via WhatsApp message, "No nothing."

aa. On or about December 7, 2021 at 10:35 am, **JOSEPH ATTAR** met with Victim 2 at the Atrium at Greenspring Shopping Center in Baltimore, Maryland. **JOSEPH ATTAR** told Victim 2 the following:

  (i) I have hours of footage of you in bed with [Victim 1] . . . hours.

  (ii) Here's what I need you to do for this to go away permanently . . . So, the only thing you need to do is very simple, is go to [Victim 1] and say to her, listen, leave Dalya alone. Don't bring her up anymore to anyone. Stay out of this election, the Delegate election. And make sure she doesn't do anything against Dalya throughout this election . . . or I'll share this video with everybody you know, everyone she knows, every Rabbi in town, your kids, your wife, her daughters. I have all her daughters' numbers in the phone if you want to see that too, right? I already have all her daughters' phone numbers, right? And every shadchan in Israel who is trying to set up her daughters, I'll share these videos with.

      (iii)    I have to protect my family . . . You can go to [Victim 1]. You can go to [Victim 1], and say [Victim 1], leave Dalya alone, for my sake and for your sake, leave Dalya alone. That's all I want. That's it. I'm not asking for much. Stay out of the race and make sure no article comes out.

During the meeting, **JOSEPH ATTAR** used his cellphone to show Victim 2 a recording containing both audio and video of Victims 1 and 2 in bed together without their knowledge.

bb. On or about December 7, 2021 at 10:50 am, **JOSEPH ATTAR** sent a WhatsApp message to Victim 1 stating, "I suggest you have a conversation with [Victim 2]."

cc. On or about December 7, 2021 at 11:10 am and 11:21 am, **JOSEPH ATTAR** called **FINKELSTEIN**. At 11:23 am, **DALYA ATTAR** called **JOSEPH ATTAR** via WhatsApp.

dd. On or about December 12, 2021 at 2:58 pm, **JOSEPH ATTAR** sent Victim 2 a WhatsApp text message asking, "Will requests be satisfied?" At 5:52 pm, Victim 2 responded: "I already told her. I did what you asked. There's nothing else I can do. [Victim 1] has already indicated multiple times that she is not involved in any activity that could or would harm Dalia. She has no intention of harming her in anyway either. You have everything you asked for. Put it to bed. Leave me the hell alone."

ee. On or about December 12, 2021 at 5:56 pm, **JOSEPH ATTAR** sent a WhatsApp message to **DALYA ATTAR** that he subsequently deleted. **DALYA ATTAR** responded with a series of WhatsApp messages stating, "Why did he text that. Did you text him first? . . . Do not text him back . . . He's trying to get you to put something in writing."

ff. On or about December 29, 2021, **FINKELSTEIN** sent a WhatsApp message to **DALYA ATTAR** stating, "Maybe we can push [Victim 2] one more time."

gg. On or about April 8, 2022, Victim 1 made a post on Facebook that included an article about a Maryland Legislature amendment vote, with a caption questioning why certain Delegates voted against the amendment. **DALYA ATTAR** sent a WhatsApp message to **JOSEPH ATTAR** and Co-Conspirator 1 containing a screenshot of Victim 1's post and stated, "Looks like she wants the world to know about her and [Victim 2]." **DALYA ATTAR** also stated, "She needs to know we're serious." Later, **DALYA ATTAR** stated, "Regardless, she and [Victim 2] need to know we're serious. It's time to show it to someone that'll get back to her."

hh. On or about April 8, 2022, **JOSEPH ATTAR** sent a WhatsApp message to **DALYA ATTAR** and Co-Conspirator 1 saying, "I'll text her something," to which **DALYA ATTAR** wrote, "No don't text her . . . Not one text. Someone like [**FINKELSTEIN's** wife, who was friends with Victim 1] needs to be shown the video and told something like if she continues, more people see it. And then you need to see [Victim 2] in person and simply tell him so far one person was shown the video and if it continues, it'll be spread . . . Do not have anything in writing or recorded with [Victim 1] or [Victim 2] any further."

ii. On or about April 8, 2022, Co-Conspirator 1 sent a WhatsApp message to **DALYA ATTAR** and **JOSEPH ATTAR** that stated, "you can't send the video to anyone. It will give her an opportunity to get in front of it. If you decide you want it known, it has to be shown not sent. Would you mind waiting until after April 15th?" **DALYA ATTAR** responded, "I agree- shown. And no I don't mind." Minutes

later, **DALYA ATTAR** sent a picture of [Victim 2]'s home and car and wrote, "He's home. Maybe I should just knock on the door and tell him." Co-Conspirator 1 responded, "it shouldn't come from you."

jj. On or about April 8, 2022, **DALYA ATTAR** sent a WhatsApp message to **JOSEPH ATTAR** and Co-Conspirator 1 that stated, "Her post didn't get any traction so this one is not a big deal . . . I just don't want her to get comfortable and start posting again." Co-Conspirator 1 responded, "I think we should just leak the fact that there is a video. Let her suffer a little for her post. Only [Victim 1] and [Victim 2] know it exists. They can't deny it. We show it when we need to show shock and awe." **DALYA ATTAR** responded, "Fine with me as long as it's leaked to the right person."

kk. Also on or about April 8, 2022, **DALYA ATTAR** sent Co-conspirator 1 a voice message on WhatsApp stating, in part:

> I really think you should talk to [**JOSEPH ATTAR**] about a smart move . . . Like, like I really, really think that we need to respond to [Victim 1]. Whether it's through [Victim 2], I personally like the idea of [**JOSEPH ATTAR**] physically showing the video to [**FINKELSTEIN's** wife] because it will obviously get back to [Victim 1] and [**JOSEPH ATTAR**] would leave a message saying, you're the first person I'm showing it to, it's going to continue if anything again is posted . . . I don't care, maybe it'll ruin their relationship, that I don't care. I just wanted it to get back to [Victim 1] and if not [**FINKELSTEIN's** wife] then someone else. Like, I personally don't think [**FINKELSTEIN**] would like the idea of using [his wife], well I know he won't like it, but at this point, I have an election coming up and I really don't care. I just care about it getting back to [Victim 1] and she understands that we're serious, not another little threat or something like that, she needs to understand we're serious.

ll. Also on or about April 8, 2022, **DALYA ATTAR** sent Co-conspirator 1 a voice message on WhatsApp discussing the recording, and stated, in part:

> We have one big bullet, and that bullet can be split into pieces, so if we show [Victim 1] a warning that we're willing to show the video, we're not afraid to show the video. It will scare [Victim 1]. Obviously going to one person who she's close with and to say, we're only sharing this with you right now, but if you continue it'll get spread more and more and more. I don't think that's using our bullet, I think that—I don't think it's using it up.

mm. Also on or about April 8, 2022, **DALYA ATTAR** sent Co-Conspirator 1 another WhatsApp message stating, "[**FINKELSTEIN**] is fine with us showing [**FINKELSTEIN's** wife] . . . I think it may still help cuz [Victim 1] would see we're showing it."

nn. On or about June 28, 2022, **JOSEPH ATTAR** engaged in a lengthy text conversation via WhatsApp with Victim 1, who at the time was in Israel. During that conversation, **JOSEPH ATTAR** made the following threats, among others:

(i) I wonder what daughters and son in law and shadchans in Israel trying to set up the rest of your daighters (sic) would like to see videos that were shared with me.

(ii) So you really want to go down this road?

(iii) It's not a threat nor it is illegal, but be certain, it will happen.

(iv) I have another idea. We each go our own way and neither talk about each other or our families to anyone. I much rather this route than other routes that no doubt will hurt your daughters shidduchim.

(v) Please don't underestimate me.

(vi) We will talk when you get here. Come as soon as you can. . . . You can make a vacation out of it . . . It can be after [the elections], I just suggest that until then, you take me up on my offer . . . Highly suggest.

15

  (vii) This is probably the best decision you can make in your lifetime.

  (viii) Really hope you make the right decision. You gain nothing by making the wrong decision and you lose a ton by making the wrong decision. Do the right thing.

  (ix) You have nothing to worry about if you accept my offer.

  (x) The smartest decision you can make in your life, is to accept my offer.

  (xi) Just leave my family alone and nothing will ever come out.

  (xii) Put me to the test. I dare you.

  (xiii) I'm not going to hurt anyone. I said I was going to visit your mom, a family friend, just to share some information she may want to know . . . No one threatened anyone . . . Actually, that she may not want to know.

18 U.S.C. § 371

## COUNTS TWO AND THREE
### (Extortion via Interstate Communications)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 9 and 11 through 13 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2. On or about the dates below, in the District of Maryland and elsewhere, the defendants,

**DALYA ATTAR,
JOSEPH J. ATTAR, and
KALMAN G. FINKELSTEIN,**

with intent to extort from any person, any money and other thing of value, to wit, to prevent Victim 1 from: a) engaging in any act and speech that could negatively impact the election campaign or political aspirations of **DALYA ATTAR**; and (b) performing any work for any other candidates for office who would challenge **DALYA ATTAR**, did transmit and cause to be transmitted in interstate and foreign commerce any communication containing any threat to injure the property and reputation of the addressee and of another.

| COUNT | DATE | THREAT |
|---|---|---|
| 2 | 12/12/2021 | WhatsApp message sent from **JOSEPH ATTAR** to Victim 2 asking, "Will requests be satisfied?" |
| 3 | 6/28/2022 | **JOSEPH ATTAR** text messages to Victim 1 via WhatsApp. |

18 U.S.C. § 875(d)
18 U.S.C. § 2

17

## COUNT FOUR
**(Interception and Disclosure of a Wire, Oral, or Electronic Communication)**

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 9 and 11 through 13 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2. From in or about at least January 2020 through at least July 2022, in the District of Maryland and elsewhere, the defendants,

**DALYA ATTAR,
JOSEPH J. ATTAR, and
KALMAN G. FINKELSTEIN,**

intentionally disclosed and endeavored to disclose, to any other person, the contents of any wire, oral, and electronic communication, to wit, an audio and video recording of Victims 1 and 2 in bed together, knowing and having reason to know that the information was obtained through the intentional, unauthorized, and illegal interception of a wire, oral, and electronic communication, and intentionally used and endeavored to use, the contents of any wire, oral, and electronic communication, knowing or having reason to know that the information was obtained through the intentional, unauthorized, and illegal interception of a wire, oral, or electronic communication.

18 U.S.C. § 2511(c) and (d)
18 U.S.C. § 2

## COUNTS FIVE THROUGH EIGHT
(Travel Act)

The Grand Jury for the District of Maryland further charges that:

1. Paragraphs 1 through 9 and 11 through 13 of Count One are realleged and incorporated by reference as though fully set forth in this Count.

2. On or about the dates below, in the District of Maryland and elsewhere, one or more of the defendants,

**DALYA ATTAR,
JOSEPH J. ATTAR, and
KALMAN G. FINKELSTEIN,**

as listed below, used and caused to be used a facility in interstate commerce, as specifically alleged below, with the intent to promote, manage, establish, carry on, and facilitate the promotion, management, establishment, and carrying on of an unlawful activity, to wit, extortion in violation of Maryland Criminal Law §§ 3-701, 3-705, and 3-706; and thereafter did perform and attempt to perform acts to promote, manage, establish, and carry on, and to facilitate the promotion, management, establishment, and carrying on of said unlawful activity.

| COUNT | DATE | USE OF INTERSTATE FACILITY |
|---|---|---|
| 5 | 12/7/2021 | **JOSEPH ATTAR** sent a WhatsApp message to Victim 1 that stated, "I suggest you have a conversation with [Victim 2]." |
| 6 | 12/29/2021 | **KALMAN FINKELSTEIN** sent a WhatsApp message to **DALYA ATTAR** that stated, "Maybe we can push [Victim 2] one more time." |

| 7 | 4/8/2022 | **DALYA ATTAR** sent a WhatsApp message to **JOSEPH ATTAR** and Co-Conspirator 1 that stated, "Looks like she wants the world to know about her and [Victim 2]." |
| 8 | 6/28/2022 | **JOSEPH ATTAR** threatened Victim 1 via WhatsApp message. |

18 U.S.C. § 1952(a)(3) and (b)(2)
18 U.S.C. § 2

*Kelly O. Hayes/vs*
Kelly O. Hayes
United States Attorney

A TRUE BILL:

10/23/2025
Date

**SIGNATURE REDACTED**

Foreperson