IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DALYA ATTAR<br>JOSEPH J. ATTAR<br>KALMAN G. FINKELSTEIN,<br><br>　　　　*Defendants*. | CASE NO. 1:25-cr-00324-SAG |

**DEFENDANT'S MOTION TO DISMISS
COUNTS TWO, THREE, AND FIVE OF THE INDICTMENT**

**TABLE OF CONTENTS**

I.   INTRODUCTION ............................................................................................................. 1
II.  FACTUAL BACKGROUND ........................................................................................... 2
    a.   Victim 1's Campaign of Harassment. ......................................................................... 2
    b.   The Alleged Extortion Conspiracy............................................................................. 3
III. LEGAL STANDARD ...................................................................................................... 4
IV.  DISCUSSION ................................................................................................................... 5
    a. The Court Must Dismiss Counts Two and Three of the Indictment. ........................... 6
        i.  Supreme Court Precedent and Common Law Require a Transferrable Property Interest to Establish the Crime of Extortion............................................................... 6
        ii. The Indictment Fails to Allege that the Defendants Extorted Money, Property, or a Thing of Tranferrable Economic Value. .................................................................. 9
    b.   The Court Must Dismiss Count Five of the Indictment............................................ 10
V.   CONCLUSION............................................................................................................... 14

Pursuant to Federal Rule of Criminal Procedure 12(b)(1), Defendant Dalya Attar, by and through undersigned counsel, respectfully requests that this Honorable Court order dismissal of Counts Two, Three, and Five of the Indictment. In support of her Motion, Defendant respectfully submits the following.[1]

I. **INTRODUCTION**

*"[L]eave Dalya alone. That's all I want. That's it."*

These words – taken directly from the Government's Indictment – make clear that this case is about a family seeking relief from a prolonged campaign of harassment by a disgruntled former employee. Senator Dalya Attar, her brother Joseph "Yossi" Attar, and their friend, Kalman Finklestein, simply wanted to be left alone.

More importantly, this case is **not** about any attempt by the Defendants to obtain money, property, or thing of transferable economic value. The Government does not, and cannot allege, that any of the alleged acts in the Indictment were undertaken for the purpose of obtaining money or property. Indeed, the Indictment is devoid of any allegation whatsoever that the "object" of the Defendants' alleged "conspiracy" was to extract anything of transferrable economic value from "Victim 1" and "Victim 2." If the Government's Indictment establishes anything, it is the opposite – that the Defendants sought nothing more than freedom from "Victim" 1's ongoing and well-documented stalking, harassment, threats, and demands. The Government cannot prosecute the Defendants for extortion on this basis, and Counts Two, Three, and Five of the Indictment must be dismissed.

---

[1] Counsel for Defendant has consulted with the Government and agreed that although the instant Motion is being filed prior to the Court's extended deadline of January 19, 2026, the Government's Opposition, if any, shall be submitted in accordance with the deadlines provided in the Court's Order Granting Defendant's Unopposed Motion to Extend Pretrial Motions Deadline. Dkt. 44.

## II.  FACTUAL BACKGROUND

### a.  Victim 1's Campaign of Harassment.

Senator Dalya Attar has dedicated her career to serving the citizens of Maryland, first as a Baltimore City prosecutor, and subsequently as an elected state representative. During her campaign for state delegate in 2018, Senator Attar had the misfortune of hiring "Victim"[2] 1 as a campaign aide. After she was fired from the Attar campaign for misconduct, Victim 1 began her own campaign of harassment against Senator Attar and her family, relentlessly texting them with threats to cause economic and reputational harm. But the harassment did not stop there – Victim 1 tried to convince the school attended by Yossi Attar's children to expel them without any rational justification. Victim 1 even showed up uninvited at restaurants, at the home of Senator Attar's parents, and at other unexpected locations for the sole purpose of haranguing Senator Attar. She repeatedly ignored written requests to stop harassing the Senator, most of those being made after her October 4, 2018 threat, in which Victim 1 ominously warned, **"Beware . . . When u least expect it, expect it. Goodbye. This is my final warning."**



Screenshot depicting Whatsapp messages between Victim 1 and Yossi Attar from October 4, 2018. The messages on the left were sent by Victim 1. Victim 1's phone number has been redacted for privacy.

---

[2] The motion adopts the identifiers "Victim" 1 and 2 used by the Government in the Indictment for ease of reference but vehemently disagrees with such references. "Victim 1" was anything but a victim as the facts will continue to show.

In December of 2021, Yossi met with Victim 2 at a diner. Although he was eventually designated as a confidential informant, at this critical moment of this case – the day upon which Yossi Attar purportedly showed Victim 2 the alleged recording – Victim 2 was *not* an agent of the government authorized to collect evidence. Rather, Victim 2 independently, surreptitiously, and in violation of Maryland's wiretap law, recorded the meeting with Yossi Attar, during which Yossi allegedly displayed his cell phone and showed an image or images to Victim 2.[3] Yossi Attar was unaware that the conversation was being recorded.

### b. The Alleged Extortion Conspiracy

The recording created by Victim 2 during that meeting serves as the centerpiece of the Government's case. It is Victim 2, and Victim 2 alone, who reports that this fleeting display included intimate images of him and Victim 1 engaging in intercourse nearly two years earlier. The Government unquestioningly accepted Victim 2's allegation as true and relied on it to form the basis of a federal indictment, despite **having no other direct evidence** of the existence of the alleged illegal recording.[4] The "illegal wiretap" case pursued by the Government does not include the recovery of any actual recording and, most ironically, it is built upon an *illegal wiretap* undertaken by its star witness.

According to the Government's theory of the case, Yossi Attar's disclosure of the purported "illegal recording" was part of a broader conspiracy to "prevent Victim 1 from (i) engaging in any

---

[3] Maryland's Wiretap and Electronic Surveillance Act makes it unlawful to "[w]illfully intercept, endeavor to intercept, or procure any other person to intercept or endeavor to intercept, any wire, oral or electronic communication," Md. Code Ann., Cts. & Jud. Proc. § 10-402(a)(1). Violation of the statute "carries both criminal and civil sanctions." *Deibler v. State*, 776 A.2d 657, 661 (Md. 2001). The statute defines the term "intercept" to mean "the aural or other acquisition of the contents of any wire, electronic, or oral communication through the use of any electronic, mechanical, or other device." Md. Code Ann., Cts. & Jud. Proc. § 10-401(10). The term "oral communication" means "any conversation or words spoken to or by any person in private conversation." *Id.* § 10-401(2).

[4] Indeed, the Government has conceded that it does not possess the video or images purportedly shown to Victim 2 by Yossi Attar during their meeting in December 2021.

act or speech that could negatively impact the election campaign or political aspirations of [Senator] Attar; (ii) performing any work for any other candidates from office who would challenge [Senator] Attar; and (iii) otherwise taking any action that could negatively influence [Senator] Attar's election campaigns, including the 2022 Maryland House of Delegates election." (Indictment at 4 ¶ 11, Dkt. 1). Notably absent from these allegations is any assertion that the Defendants engaged in the alleged conspiracy for the purpose of obtaining money, property, or other thing of transferrable economic value – a requisite element of extortion under both federal and Maryland state law. For these reasons, and those discussed below, the Indictment is facially deficient and Counts Two, Three, and Five must be dismissed.

### III.   LEGAL STANDARD

A criminal indictment must "include every essential element of an offense, or else the indictment is invalid." *U.S. v. Kingrea*, 573 U.S. 186, 191 (4th Cir. 2009) (quoting *United States v. Darby*, 37 F.3d 1059, 1063 (4th Cir. 1994)); s*ee also* Fed. R. Crim. P. 7(c)(1) ("The indictment . . . must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ."). "[S]imply parroting the language of the statute in the indictment is insufficient." *United States v. Brandon*, 298 F.3d 307, 310 (4th Cir. 2002). Pursuant to these longstanding principles, an indictment is defective, and must be dismissed, when the allegations contained therein, "even if true, would not state an offense." *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004); *see also United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)) (the court "may dismiss an indictment under Rule 12 'where there is an infirmity of law in the prosecution[.]'").

Rule 12 of the Federal Rules of Criminal Procedure allows a defendant to "raise by pretrial motion, any defense, objection, or request that the court can determine without a trial on the

4

merits." Fed. R. Crim. P. 12(b)(1). To this end, a defendant may file a pre-trial motion to dismiss the indictment in order to "test[] whether the indictment sufficiently charges the offense set forth against the defendant." *United States v. Elshinawy*, 228 F.Supp. 3d 520, 537 (D. Md. 2016) (internal quotation marks omitted) (quoting *United States v. Lindh*, 212 F.Supp.2d 541, 573 (E.D. Va. 2002)). An indictment that fails to set forth the "*essential facts*" of the alleged offense cannot survive a defendant's motion to dismiss. *See United States v. Perry*, 757 F.4d 166, 171 (4th Cir. 2014) (internal quotation marks omitted) (emphasis in original) (quoting *United States. v. Quinn*, 359 F.3d 666, 673 (4th Cir. 2004)). When, as is the case here, the defendant moves for dismissal prior to trial, the court must review the indictment with a more exacting level of scrutiny. *Kingrea*, 573 F.3d at 191.

IV.    **DISCUSSION**

The Indictment is facially defective and requires, at minimum, the dismissal of Counts Two, Three, and Five.[5] The crux of the Government's allegations is that the Defendants engaged in a conspiracy to extort Victim 1 and Victim 2 with the purpose of preventing Victim 1 from engaging in a future course of conduct. But this theory of extortion – one in which the "object" of the extortion is a non-economic and non-transferrable objective – has been rejected by the Supreme Court. Here, the Indictment fails to allege a violation of 18 U.S.C. § 875(d) or the Travel Act, because it makes no allegation that the Defendants engaged in an extortion conspiracy for the purposes of obtaining money, property, or thing of transferrable economic value. For these reasons, and those discussed in further detail below, Counts Two, Three, and Five must be dismissed.

---

[5] Although Defendants deny all allegations in the Indictment, the instant Motion is intended to address the legal sufficiency of Counts Two, Three, and Five. Defendants reserve the right to raise additional legal challenges in the future.

### a. The Court Must Dismiss Counts Two and Three of the Indictment.

### i. Supreme Court Precedent and Common Law Require a Transferrable Property Interest to Establish the Crime of Extortion.

The Supreme Court has recognized the offense of extortion as "one of the oldest crimes in our legal tradition." *Sekhar v. U.S.*, 570 U.S. 729, 733 (2013). At common law, the offense of extortion traditionally involved the "obtaining of items of value, typically cash, from the victim." *Id.* at 733; *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393, 402 (2003) ("At common law, extortion was a property offense committed by a public official who took 'any money or thing of value'"). Based upon the offense's historical origins, the Supreme Court has accordingly instructed that the "**property extorted must therefore be *transferable* – that is, capable of passing from one person to another.**" *Sekhar*, 570 U.S. at 734 (internal quotation marks omitted) (emphasis added).

Relying on these longstanding common law principles, the Supreme Court has repeatedly rejected the notion that "property" for purposes of conviction under a variety of federal statutes includes non-economic interests that are incapable of being physically acquired by or transferred to the extorter, such as authority, privileges, or responsibilities. *Id.* at 737; *Cleveland v. United States*, 531 U.S. 12, 23 (2000) (holding that the state's "intangible rights of allocation, exclusion, and control" in a prosecution under the mail fraud statute "do not create a property interest."). Under this framework, it is not simply that the object of the extortionate conduct has some inherent value to the defendant – the limited nature of property in this context is a reflection of federalism principles limiting the scope of federal jurisdiction in areas of law traditionally regulated by the state. *See, e.g.*, *id.* at 24 (expanding object of alleged criminal scheme beyond "traditional property interests" would result in a "sweeping expansion of federal criminal jurisdiction in the absence of a clear statement by Congress."); *Ciminelli v. United States*, 598 U.S. 306, 315-16 (2023) (holding

6

that under principles of common law and federalism "the wire fraud statute reaches only traditional property interests" because, to hold otherwise would "federalize[] traditionally state matters.").

The Supreme Court's opinion in *Sekhar* is instructive as to the interpretation and application of the common law definition of "extortion" in modern federal statutes. 570 U.S. at 738. The defendant in *Sekhar* was charged with extortion under both the Hobbs Act, 18 U.S.C. § 1951(a), and pursuant to 18 U.S.C. § 875(d) – the statute at issue here. *Id.* at 732 n.1. The government alleged that the defendant sent a series of anonymous e-mails to the victim, the New York State Comptroller's general counsel, demanding that he recommend moving forward with a particular investment and threatening that if he did not, the defendant would publicly disclose information about the general counsel's extramarital affair. *Id.* at 731. In analyzing whether the general counsel's recommendation constituted property or a "thing of value," capable of being extorted, the Court considered the offense's historical origins and "the well-settled meaning of the term[]" under common law. *Id.* at 732.

Traditionally, the Court observed, a conviction for "[e]xtortion required the obtaining of items of value, typically cash, from the victim." *Id.* at 733. Applying these principles to the case before it, the Court reasoned that the defendant's "goal" was to "force the general counsel to offer advice that accorded with [the defendant's] wishes[]" which constituted "coercion, not extortion." *Id.* at 738. The Court reversed the Second Circuit's affirmation of the defendant's conviction, holding that to characterize the general counsel's "recommendation" as an item capable of being extorted "would not only make nonsense of words; it would collapse the longstanding distinction between extortion and coercion and ignore Congress's choice to penalize one but not the other." *Id.* The same reasoning applies here, where the alleged "goal" of the communications made to Victims 1 and 2 was *not* to obtain money, property, or anything of transferable economic value,

7

Case 1:25-cr-00324-SAG   Document 45   Filed 12/16/25   Page 10 of 17

but instead to induce Victim 1 to forego a particular course of conduct. (*See* Indictment at 4 ¶ 11, Dkt. 1).

This Court should adopt *Sehkar*'s definition of a thing of value because courts frequently analyze the meaning of "extortion" in light of the broad framework of federal law regulating and punishing the offense. By way of example, the *Sekhar* Court applied the common law principles discussed above to the defendant's extortion convictions which arose under *both* the Hobbs Act and the statute at issue here, 18 U.S.C. § 875(d). This approach makes sense in light of the legislative history of the both the Hobbs Act and 18 U.S.C. § 875, which supports the conclusion that Congress intended the meaning and application of the term "extortion" to be the same for both statutes. *See U.S. v. Jackson*, 180 F.3d 55, 68-69 (2d Cir. 1999) (discussing how the predecessor to the Hobbs Act, the Anti–Racketeering Act of 1934, 18 U.S.C. § 420a–420e, was enacted almost contemporaneously with the predecessor to 18 U.S.C. § 875, and holding that "[g]iven Congress's contemporaneous consideration of the predecessors of § 875(d) and the Hobbs Act, both of which focused on extortion, we infer that Congress's concept of extortion was the same with respect to both statutes."). Given these circumstances, the *Sekhar* Court's analysis concerning a cognizable "object" of extortion can and should be applied to a charge of extortion under 18 U.S.C. § 875(d). *Id.* at 69 (holding that the definition of "extortion in the Hobbs Act" reflects what Congress believes to be the "generally accepted definition" of the term).[6]

---

[6] The Fourth Circuit has expanded the definition of a "thing of value" to include intangible items on one occasion. *See U.S. v. Kulla*, 434 Fed.Appx. 268, 269 (4th Cir. 2011) (holding that the "time and attention" of the victim constituted a "thing of value" under the sentencing guideline for blackmail). The court's unpublished opinion in *Kulla* should not control here given that the court relied solely on out-of-circuit authority to conclude that the defendant's intangible desire for a romantic relationship constituted a thing of value. *Id.* Moreover, the court's analysis addressed the sentencing guidelines for blackmail, which are not at issue in the instant case. *Id.*

8

### ii. The Indictment Fails to Allege that the Defendants Extorted Money, Property, or a Thing of Tranferrable Economic Value.

When viewed in light of the Supreme Court's precedent and the long-recognized principles of common law, it is apparent that the Indictment is facially defective. The Defendants are charged with two counts of extortion, in violation of 18 U.S.C. § 875(d). An individual is criminally liable under that statute if he or she "with the intent to extort from any person, firm, association, or corporation, **any money or other thing of value**, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee." 18 U.S.C. § 875(d) (emphasis added).

Here, the Government has failed to allege that Defendants engaged in extortion for purposes of obtaining a transferable property right. The Indictment is devoid of any argument that the alleged "threats" were made to either Victim 1 or Victim 2 for the purposes of obtaining anything of transferrable, economic value. Rather, the only ostensible "object" of the alleged extortion was to prevent Victim 1 from further harassing, threatening, and disparaging Senator Attar.

The Government will likely attempt to deflect from the deficiencies in the Indictment by arguing that Senator Attar retained an "economic interest" in winning the state delegate election. This argument fails for two reasons. As an initial matter, the alleged communications were not made for the benefit of Senator Attar's campaign, but instead reflect an effort to escape Victim 1's endless harassment and threats, which have been extensively documented. Second, as a matter of law, a generalized and intangible interest in one's professional development does not qualify as a transferable economic interest capable of being extorted under the applicable statute. *See Scheidler*, 537 U.S. at 405 (quoting *United States v. Nardello*, 393 U.S. 286, 290 (1969)) (no extortion when defendants "neither pursued nor received 'something of value from' respondents

9

that they could exercise, transfer, or sell.'"). In any event, the Indictment makes no allegation concerning Senator Attar's purported "economic interest" in the outcome of the election.[7]

Rather, the Indictment merely alleges that the communications were made for the purpose of preventing Victim 1 from engaging in a future course of conduct. (*See, e.g.*, Indictment at 4 ¶ 11, Dkt. 1). Like the general counsel's recommendation in *Sekhar*, this is not a property right capable of being transferred from the extorted to the alleged extorter. The Supreme Court, in *Sekhar*, when considering charges of extortion under the Hobbs Act and 18 U.S.C. § 875(d) emphasized in its holding that "[t]he property extorted must therefore be *transferable*—that is, capable of passing from one person to another. The alleged property here lacks that defining feature." *Sekhar*, 570 U.S. at 734. This precedent applies with equal force to the present case and Counts Two and Three of the Indictment must be dismissed.

### b. The Court Must Dismiss Count Five of the Indictment.

The Travel Act was enacted to address activities of "organized crime" which are "violative of state law." *Nardello*, 393 U.S. at 292. To this end, to support a conviction under the Travel Act, the Government must prove three elements: (1) interstate travel or use of interstate facilities; (2) intent to promote an unlawful activity; and (3) performance or attempted performance of an unlawful activity. *United States v. Gallo*, 782 F.2d 1191, 1194 (4th Cir. 1986). The term "unlawful activity" is defined to mean "extortion, bribery, or arson in violation of the laws of the State in which [it is] committed or of the United States." 18 U.S.C. § 1952(b)(2). When, as here, an alleged violation of state law constitutes the underlying "unlawful activity" in the indictment, the Court should rely on the state law's definition of the offense to characterize the proscribed conduct. *U.S.*

---

[7] Even though Victim 1's negligible or possibly hypothetical ability to influence the campaign was of concern to Senator Attar and her family, the emerging broader concern was simply a desire to be free from Victim 1's relentless harassment of Senator Attar and her family.

*v. Loucas*, 629 F.2d 989, 991 (4th Cir. 1980). Put differently, "the existence of a state law violation is an element of the violation of the Travel Act" such that the court must "make a determination of whether the underlying state law has been or could have been violated." *Id.* (internal quotation marks omitted) (quoting *United State v. Hiatt*, 527 F.2d 1048, 1051 (8th Cir. 1976)).

The Indictment specifically charges that the Defendants violated the Travel Act by using interstate wires in violation of Maryland Criminal Law §§ 3-701, 3-705, and 3-706. (Indictment at 19 ¶ 2, Dkt. 1). Maryland Criminal Law §§ 3-701 provides, in pertinent part, that "[a] person may not obtain, attempt to obtain, or conspire to obtain money, property, labor, services, or anything of value from another person with the person's consent, if the consent is induced by wrongful use of actual or threatened" (a) force or violence; (b) economic injury; (3) destruction, concealment, removal, confiscation, or possession of any immigration or government identification document with intent to harm the immigration status of another person; or notification of law enforcement officials about another person's undocumented or illegal immigration status. Md. Crim. Law § 3-701.  The subsequent sections, Md. Crim. Law. §§ 3-705 and 3-706, make it unlawful to "verbally threaten"  or "knowingly send or deliver" a writing to "accuse any person of a crime or of anything that, if true, would bring the person into contempt or disrepute;" or "inflict emotional distress on a person" with the intent to "unlawfully extort money, property, or anything of value from another." Thus, the object of the extortion under all three statutes must be labor, services, "money, property, or anything of value from another."

Both the Fourth Circuit and the Supreme Court have recognized that intangible "items" – such as one's reputation or livelihood – do not constitute property or "thing[s] of value" that can be "extorted" from one person and "obtained by another." *Kimberlin v. Hunton & Williams LLP*, 2016 WL 1270982, at *10 (D. Md. Mar. 29, 2016), *aff'd*, 671 F. App'x 127 (4th Cir. 2016) (citing

11

*Sekhar*, 133 S. Ct. at 2725); *State v. Rendelman*, 947 A.2d 546, 557 (Md. 2008) (quoting 18 U.S.C. § 1951(b)(2) (observing that Maryland's extortion statute was "patterned after the Hobbs Act" which defines extortion as "the *obtaining of property* from another, with his consent, induced by wrongful use of actual or threatened force, violence or fear....") (emphasis added)). In *Kimberlin*, the plaintiff alleged that the defendants extorted him in violation of Maryland and federal law when they (1) hired investigators to "dig into [his] personal li[fe]" to provide "defamatory information" to the media for publication; (2) authored and presented a PowerPoint which discussed plaintiff's criminal record with the goal to "discredit" and "shame" both him and his associates; and (3) coordinated a "covert and then overt campaign to defame, harass, and bully [p]laintiff with disinformation and defamatory blog posts/tweets meant to harm him." *Id.* at *1-2. But – as is the case here – there was **no** allegation that the defendants sought to obtain money, property, or any other *tangible* item from the plaintiff. Rather, the alleged "object" of the defendants' extortionate conduct was to "intimidate" plaintiff and "deter" him from engaging in particular conduct. *Id.* at *1.

Against this backdrop, the *Kimberlin* plaintiff alleged that the defendants acted with the "intent to extort things of value, including [p]laintiff's livelihood and reputation, by falsely accusing [p]laintiff of crimes in order to cause him contempt and disrepute." *Id.* at *10. The court rejected plaintiff's argument, reasoning that one's "livelihood and reputation" were not "items that [could] be 'extorted' from one person and 'obtained' by another" as was required for violation of Maryland's extortion statute. *Id.* (citing *Sekhar*, 570 U.S. at 733). Rather, the Court explained that a cognizable extortion claim required that the "property extorted" be "transferable – that is, capable of passing from one person to another." *Id.*

12

Here, even accepting the allegations in the Indictment as true, the Government has failed to sufficiently allege a violation of the Travel Act. The Indictment is devoid of any allegation that the Defendants engaged in any of the allegedly extortionate conduct with the intent to "extort money, property, or anything of value" from Victim 1 or Victim 2. Despite dedicating several pages to the recitation of the Defendants' communications amongst one another and those directed to Victims 1 and 2, the Government has not and cannot allege that the object of the alleged extortionate communications was "money, property, or anything of value." To the contrary, the allegations in the Indictment are directly analogous to the allegations made by the plaintiff in *Kimberlin*, given that the *only* purported purpose of the allegedly extortionate communications was to "prevent" Victim 1 from engaging in a particular course of conduct. (*See* Indictment at 4 ¶ 11, Dkt. 1 (alleging that the "purpose" of the alleged conspiracy sought to "prevent Victim 1" from engaging in particular activities)).

The Defendants' alleged communications, when viewed in light of Victim 1's prolonged and repeated harassment of the Attar family, underscore this conclusion. In every alleged communication with Victim 1 and Victim 2, Defendants sought neither money nor property; they simply sought relief from Victim 1's antagonization, threats, and attacks. For example, in one alleged communication to Victim 1, Yossi Attar stated, "We each go our own way and neither talk about each other or our families to anyone. . . . **Just leave my family alone** and nothing will ever come out." *(Id.* at 15-16 ¶¶ 13(nn)(iv), (xi), Dkt. 1 (emphasis added)). An alleged threat to damage a person's reputation, without more, does not constitute extortion under Maryland law. Because the Indictment fails to allege the predicate violation of Maryland Crim. Law §§ 3-701, 3-705, and 3-706, as is required under the Travel Act, Count 5 must be dismissed.

13

## V.     CONCLUSION

The Indictment cannot sufficiently allege the elements of extortion under either federal or Maryland state law. Rather, the allegations in the Indictment illustrate that the Defendants simply sought to be free of harassment and antagonization from Victim 1. The value of that freedom—while of legitimate interest to the real victims in this case—does not constitute a transferable property interest required for federal charges. This is not extortion. Accordingly, Counts Two, Three, and Five fail as a matter of law and should be dismissed.

Dated: December 16, 2025

Respectfully submitted,

*/s/ A. Jeff Ifrah*
A. Jeff Ifrah
James M. Trusty
IFRAH PLLC
1717 Pennsylvania Ave, N.W.
Suite 650
Washington, D.C. 20006
Tel. (202) 524-4140
Fax (202) 524-4141
jeff@ifrahlaw.com
jtrusty@ifrahlaw.com

## CERTIFICATE OF SERVICE

    I hereby certify that on this 16th day of December 2025, I electronically filed a copy of the foregoing with the Clerk of Court via CM/ECF which will notify all counsel of record.

Dated: December 16, 2025

                                                          */s/ A. Jeff Ifrah*
                                                          A.  Jeff Ifrah