**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
**(Northern Division)**

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>DALYA ATTAR, et al.,<br><br>Defendants. | Crim. No. 25-cr-00324-SAG |

**DEFENDANT JOSEPH ATTAR'S MEMORANDUM IN SUPPORT OF MOTION TO
SUPPRESS EVIDENCE OBTAINED THROUGH COERCION
AND REQUEST FOR HEARING**

As set forth in Joseph Attar's Motion to Suppress Cell Phone Evidence filed contemporaneously herewith, the investigators' searches of Mr. Attar's Samsung SM-G991U cell phone were riddled with constitutional errors. Those errors extend beyond the Fourth Amendment violations detailed in that motion. Law enforcement also obtained access to the contents of Mr. Attar's phone through a coerced statement in violation of the Fifth Amendment. Specifically, investigators compelled Mr. Attar to disclose his phone passcode by falsely asserting that he was required to do so pursuant to a judge's "order." It was only because of this coercive tactic that Mr. Attar surrendered the passcode, which state and federal authorities later used to conduct forensic extractions of the device's contents.

For the reasons explained below, and pursuant to the Fifth Amendment of the U.S. Constitution and Federal Rule of Criminal Procedure 12(b)(3), this Court should suppress all evidence obtained from Mr. Attar's cell phone.

**RELEVANT BACKGROUND[1]**

On July 19, 2022, Mr. Attar was at the election polling location on Fallstaff Road and Park Heights Avenue. *See* Ex. 17 (Declaration of Joseph Attar) ("Attar Decl.") ¶ 2. Early that morning, Trooper First Class Zachary Adams of the Maryland State Police ("MSP") and Special Agent Daniel Bralove of the Office of the State Prosecutor ("OSP") (the "Agents") approached Mr. Attar and informed him they had a warrant to seize his phone. *Id*. ¶ 3; *see also* Exs. 12 (7.19.2022 Maryland State Police Search Warrant Inventory Report and Return: Joseph Attar); 13 (7.22.2024 Office of the State Prosecutor Investigative Action: Joseph Attar – Cellular Telephone); 18 (3.7.2024 Office of the State Prosecutor Investigative Action: Execution of S&SW and Recorded Interview of Joseph Attar).[2]

After Mr. Attar gave the Agents his locked phone, the Agents asked him if the device was protected by a passcode. Ex. 17 (Attar Decl.) ¶ 5. Mr. Attar confirmed that it was, and the Agents told him they needed the code. *Id*. ¶ 7. Mr. Attar asked whether he was required to provide the Agents with his passcode. *Id*. ¶ 8. The Agents responded that he had to do so pursuant to a judge's "order." *Id*. ¶ 9.

The July 15, 2022 search warrant, signed by Judge Jakubowski of the Circuit Court for Baltimore County, Maryland, contained no such "order." *See* Ex. 2 at 1-2 (7.15.2022 Search and Seizure Warrant: Joseph Attar (Dist. Ct. of Maryland for Baltimore Cnty.)). Nor could it, since as

---

[1]    Mr. Attar adopts and incorporates the factual assertions of the Background section of his Motion to Suppress Cell Phone Evidence at 1-5, filed contemporaneously herewith. All exhibits referred to herein are contained in an Appendix of Exhibits filed in support of both motions to suppress and references to exhibit page numbers refers to PDF pagination unless otherwise specified.

[2]    The government has not produced any body-worn camera footage of this encounter and has represented that, to its knowledge, no such footage exists. *See* Ex. 19 (2.23.2026 S. Delaney Letter re: Discovery Production 5). The government has also not produced any reports or notes indicating how the Agents acquired the passcode.

described further below, a court cannot compel such statements via a warrant. Nevertheless, believing he was legally compelled by a judicial directive, Mr. Attar disclosed the passcode—a swipe pattern[3]—to the Agents. Ex. 17 (Attar Decl.) ¶ 10. The Agents then practiced entering the passcode to ensure they could unlock the phone; thereafter, agents powered off the device. *Id*. ¶ 11.

At OSP's request, MSP conducted a forensic examination of Mr. Attar's cell phone. See Ex. 3 (8.8.2022 Maryland State Police Forensic Report of Findings) at 2. DFE Christopher Cobleigh began his analysis on July 21, 2022. *Id.* To do so, DFE Cobleigh unlocked the phone "using the pattern that was depicted" on the storage bag for the phone (i.e., the swipe passcode). *See id.* at 5; *see also* Ex. 20 (Photograph of Evidence Bag Containing Swipe Code). A picture of the pattern on the storage bag is depicted below:



Using that passcode to access the device, Examiner Cobleigh then performed "a full file system extraction" the next day. Ex. 3 at 6.

---

3    A swipe pattern is a graphical passcode that unlocks a phone when the user traces a specific shape on the touchscreen with a finger.

Mr. Attar's cell phone then remained in OSP custody for over three years, until it was "taken into FBI-Baltimore custody on September 29, 2025." *See* Ex. 4 (10.10.2025 Application for a Warrant by Telephone or Other Reliable Electronic Means: Cell Phones (U.S. Dist. Ct. for the Dist. of Maryland)) at 8. The FBI also received from OSP the depiction of the swipe pattern that served as the passcode for Mr. Attar's phone. *See* Ex. 8 at 2 (7.2.2025 Federal Bureau of Investigation Electronic Communication: Derivative Evidence received from OSP-MD).[4] When FBI Task Force Officer Jared Stern requested a second extraction of the device on October 14, 2025, he noted that the passcode—which was required to access the device for the extraction— was "located on evidence packaging." Ex. 8. TFO Stern also used Mr. Attar's passcode on October 20, 2025 in order to attempt an ultimately unsuccessful manual search of the phone. *See* Ex. 10 (10.20.2025 Federal Bureau of Investigation Memorandum: Manual Search of 1B6).

## ARGUMENT

A statement is involuntary—and thus subject to the protections of the Fifth Amendment and suppression—when it is the product of "coercive police activity" that overbears the defendant's "will" or critically impairs his "capacity for self-determination." *United States v. Braxton*, 112 F.3d 777, 780–81 (4th Cir. 1997) (citations omitted). "[T]hose subjected to coercive police interrogations have an *automatic* protection from the use of their involuntary statements (or evidence derived from their statements) in any subsequent criminal trial." *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) (emphasis in original). Here, law enforcement agents' false statements to Mr. Attar that he was legally required to provide them the swipe passcode for his phone pursuant

---

[4]    Mr. Attar's cell phone is referenced in this and other FBI documents as "1B6." Mr. Finkelstein's cell phones are designated as "1B5" and "1B7." *See* Ex. 11 (1.6.2026 S. Delaney Letter re: Discovery Production 4).

to a "court order" impaired his ability to make an informed decision and therefore, all evidence obtained from Mr. Attar's phone flowed directly from this coercive activity should be suppressed.

### A. The disclosure of Mr. Attar's cell phone passcode was testimonial.

To begin with, neither the warrant nor the Agents could lawfully require Mr. Attar to provide the password for his phone. Such statements are testimonial and cannot be compelled from an individual. *See, e.g.*, *United States v. Shvartsman*, 722 F. Supp. 3d 276, 315 (S.D.N.Y. 2024) (compulsion of defendant's passcode . . . "was both testimonial and incriminating"); *United States v. Gogic*, 770 F. Supp. 3d 529, 539 (E.D.N.Y. 2025) ("It is no matter that the passcode was not 'directly or inherently self-incriminating,' as it led to incriminating evidence stored on the iPhone." (quoting *United States v. Greenfield*, 831 F.3d 106, 127 (2d Cir. 2016); citing *Ohio v. Reiner*, 532 U.S. 17, 20 (2001) (per curiam) ("The Fifth Amendment … privilege not only extends to answers that would in themselves support a conviction, but likewise embraces those which would furnish a link in the chain of evidence needed to prosecute the claimant."))) (internal quotations omitted).

Nor was requiring Mr. Attar to provide his passcode analogous to having him to place his thumb on a device, or to hold the device up to his face (a "biometric unlock"). *See United States v. Brown*, 125 F.4th 1186, 1202-03 (D.C. Cir. 2025) ("If Schwartz had instead been compelled to disclose whether he could open the phone, and made to say yes or to verbally disclose the password, those answers unquestionably would be testimonial communications."). A biometric phone unlock can be "accomplished even if [the defendant] had been unconscious" and thus does not "intrude on the contents of [the defendant's] mind." *United States v. Payne*, 99 F.4th 495, 511 (9th Cir. 2024). In contrast, providing a swipe passcode clearly requires "cognitive exertion," *Id.* at 512, and is thus testimonial. Moreover, even such biometric unlock requirements (which this warrant did not contain anyway), stand on unsteady ground Fifth Amendment ground. *See, e.g.*, *El Ali v. Barr*, 473 F. Supp. 3d 479, 522 (D. Md. 2020) (noting that the forced use of biometric

information is an "unsettled question of law"). Thus, the only substantive question here is whether Mr. Attar was coerced into providing the passcode for his device. He was.

**B.     Mr. Attar was coerced into involuntarily providing the passcode, and the contents of the phone should therefore be suppressed.**

The Fifth Amendment "speaks of compulsion." *Minnesota v. Murphy*, 465 U.S. 420, 427 (1984). A statement is compelled when "considering the totality of the circumstances, the free will of the [person making the statement] was overborne." *United States v. Washington*, 431 U.S. 181, 188 (1977). "To determine whether a defendant's will has been overborne or his capacity for self-determination critically impaired, courts must consider the 'totality of the circumstances,' including the characteristics of the defendant, the setting of the interview, and the details of the interrogation." *Braxton*, 112 F.3d at 781.

Clearly,  the Agents' directive  that Mr. Attar give them the passcode because of a non-existent judge's "order" qualified as compulsion. Short of threatening immediate bodily injury, it is hard to imagine a more overbearing force than an alleged judicial order (for which someone would no doubt fear arrest if they failed to comply). While the government may use "ploys to mislead a suspect or lull him into a false sense of security," *Illinois v. Perkins*, 496 U.S. 292, 297 (1990), the government cannot falsely assert that a nonexistent judge's order compels a defendant disclose a passcode, any more than they could falsely tell a defendant that they had a judge's order compelling him to confess to a crime. *See United States v. Lall*, 607 F.3d 1277, 1286 (11th Cir. 2010) (holding that the government's false statements to defendant made it "impossible for him to weigh the pros and cons of confessing and go with the balance as it appears at the time," and that "if the government feeds the defendant false information that seriously distorts his choice ... then the confession must go out."); *accord United States Ansah*, No. 1:17-CR-00381-1-WSD-JSA, 2018 WL 4495523, at *5-7 (N.D. Ga. June 12, 2018) *report and recommendation adopted*, 2018

WL 3414318 (Jul. 13, 2018) (suppressing cell phone password obtained when agents—who had a warrant—falsely promised defendant that they would not use his password to "**go[] into your emails or anything like that.**") (emphasis in original). *Cf. Bumper v. North Carolina*, 391 U.S. 543, 550 (1968) ("When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search. The situation is instinct with coercion—albeit colorably lawful coercion. *Where there is coercion there cannot be consent*." (emphasis added)).

Notably, the government has produced no evidence explaining how the Agents obtained the passcode for Mr. Attar's phone. No body-worn camera footage, reports, or notes regarding the passcode have been produced. *See supra* n.2. An OSP memorandum describing the execution of the July 15, 2022 warrant—which appears to have been written *two years* after the warrant was executed—states only that "the listed cellular telephone ('phone') was seized from ATTAR by ADAMS. Custody of the phone was given to Special Agent Daniel BRALOVE of the OSP." *See* Ex. 13 (7.22.2024 Office of the State Prosecutor Investigative Action: Joseph Attar – Cellular Telephone). A second OSP memorandum describing the warrant execution—also apparently written *over a year-and-a-half* after the events—provides more detail, including direct quotations attributed to Mr. Attar, s*ee* Ex. 18 (3.7.2024 Office of the State Prosecutor Investigative Action: Execution of S&SW and Recorded Interview of Joseph Attar), but neither memorandum makes any mention as to how the agents acquired the passcode. *Compare United States v. Bendann*, Crim. No. JKB-23-278, 2024 WL 2155235, at \*2 (D. Md. May 13, 2024) (relying "in particular" on body-worn camera in finding a password was voluntarily provided in a February 2023 search); *United States v. Contreras*, No. 3:23-cr-00135-MHH HNJ-2, 2025 WL 3298317, at \*10 (N.D. Ala. Nov. 26, 2025) (the defendant did not have a "meaningful choice" to decline the search of his cell

phone "because in response to Mr. Contreras's question, 'Do I have to?,' [Special Agent] Morris told Mr. Contreras that he would search the phone regardless of Mr. Contreras's consent"); *see also id.* at \*11 (law enforcement "conveniently delayed recording until after the critical communications about *Miranda*, the password for the iPhone, and consent concluded," which cut against officer's credibility). *Cf. United States v. Vaghari*, 653 F. Supp. 2d 537, 545 (E.D. Pa. 2009), *aff'd*, 500 F. App'x 139 (3d Cir. 2012) (law enforcement's failure to present defendant with a written consent form weighed against conclusion that consent to search was voluntary); *Principles of the Law, Policing* § 4.06(b)(3) (Am. L. Inst. 2022) ("[A]gencies should consider … requiring officers to obtain and document, either in writing or in some other reliable form such as body-worn-camera video, acknowledgement that consent [to search] was sought and provided."). By contrast, a contemporary police report created two hours after the seizure of co-defendant Kalman Finkelstein's phone explicitly states that Mr. Finkelstein provided his phones' passcodes "willingly," and that he "unlock[ed] the phones as he handed them over." *See* Ex. 21 (3.4.2024 Office of the State Prosecutor Investigative Action: Search and Seizure Warrant – K. Finkelstein) at 2-3 (Maryland State Police Incident Report dated Jul., 19, 2022).

Law enforcement's failure to memorialize the seizure of Mr. Attar's phone in a police report for two years is anomalous. Even more surprising is the complete failure to document how the Agents obtained the passcode to Mr. Attar's phone (as the same law enforcement officials did with Mr. Finkelstein's phone). This failure is even more striking, given that OSP itself documented the existence swipe pattern on the phone's evidence packaging, *see* Ex. 3 (MSP Forensic Report of Findings) at 5, and later provided that depiction to the FBI to ensure continued access to the device. *See* Ex. 9 at 2 (0.14.2025 Federal Bureau of Investigation CART Service Request Form).

8

The record in this case leads to the inescapable conclusion that Mr. Attar was unlawfully compelled to provide the passcode for his cell phone. Accordingly, the full contents of the phone should be suppressed. *See United States v. Brown*, 125 F.4th 1186, 1205 (D.C. Cir. 2025) (suppressing evidence on phone where defendant was unlawfully compelled to unlock phone).

## CONCLUSION

For the foregoing reasons, this Court should suppress all evidence obtained from Mr. Attar's Samsung SM-G991U cell phone.

Respectfully submitted,

Dated: April 1, 2026

*/s/ Gregg L. Bernstein*
Gregg L. Bernstein (Bar No. 01340)
Samantha A. M. Kavanagh (Bar No. 21374)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD  21202
Tel No. (410) 332-0444
Fax No. (410) 659-0436
gbernstein@zuckerman.com
skavanagh@zuckerman.com

*Counsel for Defendant Joseph J. Attar*

## CERTIFICATE OF SERVICE

I certify that on April 1, 2026, copies of the forgoing Memorandum in support of Motion and Appendix of Exhibits 1-21 have been served via e-mail on all counsel of record.

*/s/ Gregg L. Bernstein*
Gregg L. Bernstein (Bar No. 01340)