**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| | * | |
| | * | **Criminal Case No.: SAG-25-00324** |
| **v.** | * | |
| | * | |
| **DALYA ATTAR,** *et al.* | * | |
| | * | |
| **Defendants.** | * | |
| | * | |

\* \* \* \* \* \* \* \* \* \*

**<u>MEMORANDUM OPINION</u>**

The government indicted Dalya Attar ("Ms. Attar"), Joseph J. Attar ("Mr. Attar"), and Kalman G. Finkelstein (collectively, "Defendants") for crimes relating to conspiracy, extortion, and interception of communications. Ms. Attar has filed a motion to dismiss most of the charges. ECF 45. The government opposed the motion, ECF 82, and Ms. Attar filed a reply, ECF 90. Additionally, Mr. Attar and Mr. Finkelstein have filed motions to join the motion to dismiss, ECF 56, 65, which this Court will grant as unopposed. On July 28, 2026, this Court held a hearing and heard argument on the motion to dismiss. ECF 103. For the reasons that follow, the motion to dismiss will be granted.

## I.    BACKGROUND

The following facts are derived from the indictment, ECF 1, and are assumed to be true for the purpose of this motion.

Ms. Attar ran for and won a seat to the Maryland House of Delegates in 2022. *Id.* ¶ 1. Mr. Attar is Ms. Attar's brother and assisted her on the 2022 campaign. *Id.* ¶ 2. Mr. Finkelstein previously served as a Baltimore City Police Officer and also assisted Ms. Attar on the 2022 campaign. *Id.* ¶ 3.

Victim 1 worked as a consultant for one of Ms. Attar's previous political campaigns, but that work ended prematurely due to disagreement, and Victim 1 became unsupportive of Ms. Attar's candidacy. *Id.* ¶¶ 6–7. Victim 1 had a romantic relationship with Victim 2, who was married to another person. *Id.* ¶ 8.

In 2020, Mr. Finkelstein coordinated for Victim 1 to stay at an apartment belonging to one of his relatives. *Id.* ¶ 13c. Mr. Attar then placed a recording device in that apartment. *Id.* ¶ 13j. Subsequently, Ms. Attar filed for candidacy in the 2022 election. *Id.* ¶ 13w. That day, Mr. Attar arranged a meeting with Victim 2. *Id.* During that meeting, Mr. Attar informed Victim 2 that he had a video of Victim 2 in bed with Victim 1 and showed Victim 2 the video. *Id.* ¶ 13aa. Mr. Attar told Victim 2 to tell Victim 1 not to negatively interfere with Ms. Attar's 2022 campaign or he would share the video with everyone that Victim 1 and Victim 2 know. *Id.* Mr. Attar later sent several messages to Victim 1 stating, among other things, that he wondered what Victim 1's daughters and matchmakers trying to set up her daughters would think of videos that he had and "Just leave my family alone and nothing will ever come out." *Id.* ¶ 13nn.

## II.   LEGAL STANDARD

A criminal indictment must include every element of each charged offense. *United States v. Kingrea*, 573 F.3d 186, 191 (4th Cir. 2009). Before trial, a defendant may raise a defect in the indictment for failure to state an offense. Fed. R. Crim. P. 12(b)(3)(B)(v). To succeed on a motion to dismiss an indictment, the defendant must show that the indictment's allegations, even if true, do not state an offense. *United States v. Thomas*, 367 F.3d 194, 197 (4th Cir. 2004). Thus, dismissal is appropriate under Rule 12 "where there is an infirmity of law in the prosecution." *United States v. Engle*, 676 F.3d 405, 415 (4th Cir. 2012) (quoting *United States v. Snipes*, 611 F.3d 855, 866 (11th Cir. 2010)).

### III.  DISCUSSION

#### A.  Counts Two and Three

Counts Two and Three of the indictment charge violations of 18 U.S.C. § 875(d). More specifically, Counts Two and Three allege that Defendants:

> with intent to extort from any person, any money and other thing of value, to wit, to prevent Victim 1 from: a) engaging in any act and speech that could negatively impact the election campaign or political aspirations of DALYA ATTAR; and (b) performing any work for any other candidates for office who would challenge DALYA ATTAR, did transmit and cause to be transmitted in interstate and foreign commerce any communication containing any threat to injure the property and reputation of the addressee and of another.

ECF 1 at 17. Defendants contend that these counts fail to state violations of § 875(d) because refraining from taking certain actions does not constitute a thing of value that can be extorted within the meaning of the statute.

Section 875(d) provides:

> Whoever, with intent to extort from any person, firm, association, or corporation, any money or other thing of value, transmits in interstate or foreign commerce any communication containing any threat to injure the property or reputation of the addressee or of another or the reputation of a deceased person or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

Section 875 does not define "extort." But the Hobbs Act, which also prohibits extortion under certain circumstances, does define it. *See* 18 U.S.C. § 1951(b)(2) (defining "extortion," in pertinent part, as "the obtaining of property from another"). The Supreme Court interpreted the scope of Hobbs Act extortion in *Sekhar v. United States*, 570 U.S. 729, 732–37 (2013), and its reasoning is instructive here.

The Court first recognized the interpretive principle that, absent indication otherwise, Congress intends to incorporate the traditional meaning of the common law terms that it uses. *Id.* at 732. Accordingly, the Court noted that at common law, extortion required "the obtaining of

3

items of value, typically cash, from the victim" and did not encompass coercion to act or refrain from acting. *Id.* at 733. The Court therefore concluded that property extorted under the Hobbs Act must be "transferable—that is, capable of passing from one person to another" and did not encompass the subject of the alleged extortion in that case, a recommendation that an agency make a particular investment. *Id.* at 734. In *Sekhar*, both parties conceded that the Hobbs Act definition of "extortion" also applied to § 875(d). *Id.* at 732 n.1. The Court expressly declined to opine on the validity of that concession and did not otherwise address § 875(d). *Id.*

The Supreme Court also considered Hobbs Act extortion in *Scheidler v. National Organization for Women, Inc.*, 537 U.S. 393 (2003). As in *Sekhar*, the *Scheidler* Court emphasized the difference between coercion and extortion, noting that "there has been and continues to be a recognized difference between these two crimes, and we find it evident that this distinction was not lost on Congress in formulating the Hobbs Act." *Id.* at 407–08.

Consistent with the common law interpretation given to Hobbs Act extortion, the Fourth Circuit has determined that, although § 875 does not define extortion, § 875 "employs 'the traditional concept of extortion.'" *United States v. White*, 810 F.3d 212, 223 (4th Cir. 2016) (quoting *United States v. Jackson*, 180 F.3d 55, 70 (2d Cir. 1999)). Accordingly, the Fourth Circuit has interpreted "extort" in § 875 to require an element of wrongfulness because extortion traditionally required an element of wrongfulness. *Id.*

This Court concludes that the reasoning from these cases applies to the question left open in *Sekhar* and at issue in this case. Although § 875 does not define "extort," this Court must give that common law term its traditional common law meaning. As explained in *Sekhar* and *Scheidler*, common law extortion did not encompass coercion to act or refrain from acting. Accordingly, a

4

person cannot transmit a threat "with intent to extort from any person, firm, association, or corporation, any money or other thing of value" if the purported "thing of value" is forbearance.

Here, the indictment alleged the "thing of value" to be "to prevent Victim 1 from: a) engaging in any act and speech that could negatively impact the election campaign or political aspirations of DALYA ATTAR; and (b) performing any work for any other candidates for office who would challenge DALYA ATTAR." Because the purported thing of value was Victim 1's forbearance from acting in certain ways, the conduct as alleged would constitute common law coercion, which common law extortion does not reach. Accordingly, § 875(d) does not criminalize the conduct alleged in the indictment.

This Court is not persuaded otherwise by the government's reliance on cases interpreting language similar to "any money or other thing of value" in other statutes to encompass intangible things. The government principally relies on *United States v. Kulla*, 434 F. App'x 268, 269 (4th Cir. 2011), which interpreted the language "any money or other valuable thing" in 18 U.S.C. § 873. That statute, titled "Blackmail," does not use the words "extort" or "extortion." § 873. Additionally, the government cites several cases from other circuits interpreting language similar to "any money or other thing of value" in the context of other provisions that do not concern extortion. *See United States v. Barraza*, 655 F.3d 375, 383–84 (5th Cir. 2011) (interpreting 18 U.S.C. § 1343, which prohibits wire fraud); *United States v. Owens*, 585 F.3d 1055, 1058 (7th Cir. 2009) (interpreting U.S.S.G. § 2G2.2(b)(3)(B), a sentencing enhancement for distribution of child pornography); *United States v. Mamolejo*, 89 F.3d 1185, 1191 (5th Cir. 1996) (interpreting 18 U.S.C. § 666, which prohibits bribery); *United States v. Girard*, 601 F.2d 69, 71 (2d Cir. 1979) (interpreting 18 U.S.C. § 641, which prohibits embezzlement).

This Court acknowledges that, on its own, "any money or other thing of value" or similar language can be and has been interpreted to encompass intangible things. But this Court must read § 875(d) as a whole. In the context of this statute, the word "extort" must limit "any money or other thing of value" to only tangible, transferrable things, and not forbearance, consistent with the common law definition of extortion. These cases interpreting statutes that do not proscribe extortion are therefore inapposite.

Nor is this Court persuaded by the two cases cited by the government that do concern extortion statutes. One case, *United States v. Zouras*, 497 F.2d 1115, 1121 (7th Cir. 1974), which interpreted the extortion provision at 18 U.S.C. § 876, was decided long before the Supreme Court's decision in *Sekhar*. Similarly, the other case, which interpreted the language in § 875 itself, merely cited a pre-*Sekhar* case and did not discuss *Sekhar* at all. *See United States v. Hobgood*, 868 F.3d 744, 747 (8th Cir. 2017) (citing *United States v. Petrovich*, 701 F.3d 849, 858 (8th Cir. 2012)). This Court will follow the reasoning of *Sekhar*, *Scheidler*, and *White*, all of which, unlike *Hobgood*, are binding on this Court. The reasoning of those cases compels this Court to limit extortion under § 875(d) to its traditional common law definition, which does not encompass the coercion to obtain forbearance alleged here.[1]

Although this Court does not condone the conduct alleged in the indictment, because § 875(d) does not criminalize it, this Court must dismiss Counts Two and Three.

---

[1] Although this Court perceives the statute's text as clear, even were it ambiguous, the rule of lenity would require this Court to interpret any ambiguities about its breadth in Defendants' favor. *See United States v. Davis*, 588 U.S. 445, 464 (2019).

### B. Counts Five–Eight

Defendants also challenge Counts Five–Eight, which charge violations of the Travel Act. The Travel Act requires, as pertinent here, an intent to further extortion in violation of state law. 18 U.S.C. § 1952(a)(3), (b). Specifically, the indictment alleges "extortion in violation of Maryland Criminal Law §§ 3-701, 3-705, and 3-706." ECF 1 at 19. Section 3-701 prohibits "[e]xtortion generally" and uses the language "obtain, attempt to obtain, or conspire to obtain money, property, labor, services, or anything of value from another person with the person's consent." Section 3-705 prohibits "[e]xtortion by verbal threat" and uses the language "extort money, property, labor, services, or anything of value." And § 3-706 prohibits "[e]xtortion by written threat" and uses the language "extort money, property, or anything of value."

Maryland and federal courts have interpreted these provisions consistently with the Hobbs Act. *See, e.g.*, *State v. Rendelman*, 404 Md. 500, 519–23 (2008) (stating that § 3-701 "appears to be patterned after the Hobbs Act" and applying cases analyzing the Hobbs Act); *Frederick v. State*, No. 2350, 2017 WL 4675797, at *4 (Md. Ct. Spec. App. Oct. 17, 2017) (considering common law definitions to interpret § 3-702 because it closely resembled common law extortion and appeared to have been based on federal statutes that, in turn, were based on common law extortion); *Kimberlin v. Hunton & Williams LLP*, No. GJH-15-723, 2016 WL 1270982, at *10 (D. Md. Mar. 29, 2016), *aff'd*, 671 F. App'x 127 (4th Cir. 2016) (noting the similarities to the Hobbs Act and applying *Sekhar* to conclude that a civil plaintiff had failed to state a claim under § 3-706 because the allegations concerned something non-transferrable).

Consistent with these cases, this Court will interpret the Maryland statutes in line with the Hobbs Act and common law extortion. For the reasons explained above, given that interpretation, the statutes do not reach the coercion to obtain forbearance alleged here. Section 3-701 provides

further evidence that these statutes do not reach that conduct. That provision prescribes penalties based on the monetary value of the property extorted. § 3-701(c), (d). Given the difficulty in valuating forbearance, particularly something as elusive as refraining from "engaging in any act and speech that could negatively impact [an] election campaign or political aspirations," this Court cannot conclude that the Maryland General Assembly would prescribe penalties in such a way had it intended extortion to reach efforts to obtain forbearance.

Thus, because the state statutes specified in the Travel Act counts do not proscribe the conduct alleged in the indictment, this Court must dismiss Counts Five–Eight.

## IV.    CONCLUSION

For the reasons stated above, the motion to dismiss, ECF 45, is granted. Counts Two, Three, and Five–Eight are dismissed. A separate Order follows.

Dated: July 31, 2026                                          /s/
                                                  Stephanie A. Gallagher
                                                  United States District Judge